## Case No. 10,406.

### OCEAN INS. CO. v. FIELDS.

[2 Story, 59.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1841.

EQUITY—BILL CHARGING FELONY—PROOF — PUNISHMENT UNDER CRIMINAL LAW — DEMURRER — RELIEF AFTER TRIAL—CUMULATIVE EVIDENCE—INSURANCE—OVER-VALUATION.

1. A bill in equity, although it charge a felony, may be sustained by proof; but the defendant is not bound to make a discovery thereof.

2. At common law, the civil rights of a party, injured by a felonious act, are only suspended until the rights of the government to punish it criminally have been satisfied. But a verdict and judgment thereupon are conclusive, as to the fact, in a suit upon any collateral matter connected therewith.

3. If the felony be not cognizable under the criminal law of the country, where civil redress is sought, the civil rights of the party seeking redress are not thereby suspended.

4. A bill in equity will be sustained to set aside a judgment upon a policy of insurance, upon the ground of such newly-discovered evidence of fraud and felony on the part of the original plaintiff, as would, if pleaded, have been a perfect defence to the previous action; especially, if the felony were committed by a British subject in a British vessel, on British waters; for the offence is not, in such case, punishable by the criminal law of this country.

[Cited in Trefz v. Knickerbocker Life Ins. Co., 8 Fed. 180.]

[Cited in State v. Matley, 17 Neb. 567, 24 N. W. 201; Plymouth v. Russell Mills, 7 Allen, 441; Barker v. Walsh, 14 Allen, 175.]

5. Over-valuation and misrepresentation of the value of the subject-matter of insurance, although they afford no conclusive proof of fraud, afford a very strong presumption thereof.

6. The office of a demurrer to a bill in equity, is to bring before the court the right to maintain a bill, admitting all its allegations to be true, and the court will not, therefore, examine aliunde, what facts might or might not defeat it; for this is the office of an answer, or plea.

7. Although a court of equity will not ordinarily grant relief, in cases after trial, where mere cumulative evidence of fraud or of any other fact is discovered, yet it will, wherever the defence was originally imperfectly made out from the want of distinct proof, which is afterward discovered; although there were circumstances of suspicion.

Bill in equity to set aside a judgment in this court obtained upon a policy of insurance upon the ground of newly-discovered evidence. The bill in substance stated, that the defendant [Robert Fields] was, or pretended to be, the owner of a schooner called the Frances, which he had agreed to sell at Antigua for $6,000, and had agreed to carry there from St. Johns with a cargo of lumber; and that the said defendant intending to defraud the plaintiffs, and to induce them to insure her for more than she was worth, and then to cast away and destroy her, and then to demand the sum insured, did, on the 1st of May, 1837, fraudulently represent to the plaintiffs, that the

[1] [Reported by William W. Story, Esq.]

said vessel was worth $8,000, and procured insurance for one year on the said vessel valued at that sum; and that the plaintiffs being deceived by the said pretences, executed two policies to that effect, which is set forth. That the said policies being obtained by fraud, were void. That the said defendant, on the 29th of June, 1837, intending to destroy the said schooner, and fraudulently to recover the said insurance, sailed from St. Johns with a cargo of lumber, and a crew selected by him, ostensibly for Antigua, and proceeded down the Bay of Fundy, in pleasant weather, from side to side, with the apparent intent to effect his said intention, and navigated her among breakers, where she was saved by the interference of the crew; that he went out of his course without necessity; and that, on the 2d of July, 1837, he intentionally cast her ashore in a dangerous situation, fastened her there, and went on shore with his crew, and suffered her to remain there eleven days, though she might easily have been got off; and that while so lying, a rock under her bilge caused her to leak. That about July, 16th, 1837, one Hutchins took possession of her and got her off, and removed her, full of water, to Mud island. That about July 17th, 1837, Elisha D'Wolf took her from the said Hutchins, and carried her to Pimlico, a convenient place for repairs. That about July 31st, 1837, John Everett, agent for the plaintiffs, took charge of her, and with the assistance of the defendant and one Rankin, unloaded the residue of cargo, repaired her bottom, and made her tight enough to be carried to St. Johns. That about the 9th of August, 1837, the said vessel proceeded towards St. Johns, the said Rankin being on board as seaman, and Fields (the defendant) as passenger, under command of Everett. That, on her passage she went into Yarmouth harbor, and waited there two days for a favorable wind, and leaked but little. That the defendant bought an auger at Yarmouth, and bored, or caused to be bored, holes through the inner plank of the said vessel, and through the out-board plank five holes, which he then filled up with slight plugs, easily removed. That, the said vessel proceeded on her passage and came to anchor in Cranberry Cove, the weather being pleasant, and the water smooth; that the said Everett, having caused the vessel to be pumped dry, went below for two hours, and then returning to deck, found her half full of water and sinking; which was owing to the withdrawal of the said plugs; and that the said vessel was then drawn on shore and filled with water. That, on August 14th, the defendant insisted upon having a survey, which was held, and the said vessel was condemned and sold for $782.20, which was paid to the said defendant. That, on February 23rd, 1838, the said defendant Fields sued out a writ from the United States circuit court for the First circuit against the plaintiffs, re-

turnable, &c.; and that, at the Oct. term, 1838, issue was joined, and that a trial was had before a jury, and that "your orators" being ignorant of such fraudulent intent and practices, and unable to prove them, a verdict was rendered in favor of Fields, which the plaintiffs were compelled to pay. That since payment, the plaintiffs discovered and were informed of the said boring, and hoped, that they would not have been called on to pay the sums so insured, and that the sums paid would be refunded. That the defendant pretends, that the policies were not fraudulently obtained; that the plaintiffs were not deceived; that no attempt was made to destroy the said vessel or to defraud the plaintiffs; and that the plaintiffs were justly held to pay the sums insured. The bill charges that the contrary is true, and that the orators were deceived by the said Fields; who intended to defraud and actually did defraud them. Whereupon the bill prayed that the defendant might answer, and especially might state whether he represented himself to be sole owner at the time of effecting the insurance? Whether he was owner, and if not, how much he did own, and who were the other owners? Whether he had not agreed to sell her for $6,000, and to whom? Whether he did not take passage in her for St. Johns? Whether he and Rankin were not on board while she was unloading? Whether, while at Yarmouth, the said Rankin, at the defendant's request, did not purchase an auger? And for what purpose, and what use was made of it? Whether at Cranberry Cove the defendant took charge of the said vessel? Whether a survey was there called? Whether the vessel was sold, and the proceeds received by the defendant? The bill also prayed, that the court would decree the defendant to repay the amount of the said judgment; and that the said judgment should be declared void; and also prayed for farther relief. A demurrer was put in to the bill.

F. C. Loring, for defendant.

The first objection is, that this bill charges the defendant with a crime, punishable by our laws, and by the English laws, with death; and that the whole equity of the bill is founded on this charge. We maintain that, upon the face of the bill, there is no remedy either at law, or in equity. If the defendant has committed this crime, he may be indicted and punished; but the crime cannot be made the ground and substance of a civil action till after the criminal trial. An action of assumpsit will not lie against a man who has stolen money; the civil right is merged or suspended in the felony, and no stronger authority is necessary to sustain this position, than the fact that no single case can be found where a bill for relief and discovery has been brought on the ground, that the defendant has committed a felony,

and thereby become possessed of money to which he was not entitled. Cox v. Paxton, 17 Ves. 329; Crosby v. Leng, 12 East, 415.

The next objection to the bill is, that it is brought to set aside a judgment, and shows no sufficient cause. The law on this subject is, I suppose, the same as is applicable to bills of review in equity; and the plaintiffs must make out the same cause to set aside a judgment at law as to review a decree of a court of equity. Story, Eq. Pl. 322, 328, 602; 2 Story, Eq. Jur. 180. These authorities sustain these positions: That the plaintiffs must show either new matter arisen since the judgment, or new proof come to light since that time, which could not possibly have been used at the trial; and that the complainants could not, with due diligence, have ascertained and proved the new fact at the hearing. The bill affords no ground for equitable relief, and is bad on demurrer.

The bill contains two charges: 1st, a fraudulent over-valuation. But it does not allege, that this was a fact unknown to them at the hearing. nor that it could not have been proved then; nor does it even allege, that the fact set forth as evidence of the over-valuation, the contract of sale, was unknown to them at the trial. But if these things were properly alleged, they do not make out any ground for equitable relief on this point. Supposing the defendant had contracted to sell his vessel at some future time for $6,000, there would be no fraud in insuring her while she was his property for $8,000, if the insurers were willing to do so. The valuation is not a warranty; the insurer gets his premium; and if there is a substantial interest at risk, which is not denied by the bill, and the owner chooses to pay a high premium, there is no fraud in valuing the subject insured at a higher sum than it would bring in the market, if the valuation is not so excessive as necessarily to lead to a presumption of fraud. Alsop v. Commercial Ins. Co. [Case No. 262]; Marine Ins. Co. v. Hodgson, 7 Cranch [11 U. S. 332].

The second charge is, that the vessel was intentionally cast ashore, and her destruction afterward consummated by boring. There is a general allegation, that the complainants were ignorant, at the hearing, of the defendant's fraudulent acts and intentions, and unable to prove the same; and a special allegation that, since the trial, they have discovered the fact that she was bored, and this special allegation impliedly admits, that they knew, at the trial, that the vessel was fraudulently destroyed, and have since discovered the manner in which it was done. The charge of fraud was in their knowledge at the trial, and the defence was made on that ground; if that does not appear by the bill, it is admitted to be the fact; and it is not in fact pretended that any thing has since been discovered, except that two or three years after the trial, a piece of wood was

brought to Boston, which, it is alleged, was taken from this vessel. This fact, if it be a fact, is not any new matter; but is parcel of the fraud formerly charged by the complainants. If the vessel was bored by the defendant, it was done before the trial. The complainants then are bound to show, in this bill, that this new proof has come to light since the trial; and not only that, but that they could not, by the use of reasonable diligence, have ascertained and proved it at the trial. Verdicts will not be set aside, if the facts on which the bill is founded, though discovered since the hearing, might have been before. Taylor v. Sheppard, 1 Younge & C. Exch. 271. Nor unless some special ground of equitable relief is shown. Harrison v. Nettleship, 2 Mylne & K. 423. Nor to enable a party to get fresh witnesses. Hankey v. Vernon, 2 Cox, 12; Williams v. Lee, 3 Atk. 223; Whitmore v. Thornton, 3 Price, 231. Injunction granted after verdict dissolved though bill charged fraud and defendant had not answered. Le Guen v. Gouverneur, 1 Johns. Cas. 495; Bateman v. Willeo, 1 Schoales & L. 201.

What are the allegations in the bill touching this matter? There is not a single circumstance alleged, or reason given, why this proof was not obtained and used at the trial. Even if we admit the general allegation of ignorance not to be contradicted by the special allegation of the discovery since the trial of the boring, the complainants show no cause, and no reason why they did not discover the fraud then. But if we take the case as the plaintiffs state it, that since the trial only, they have discovered that the vessel was bored; then it appears, that they knew or suspected the fraud at the trial; and that, since the trial, they have discovered a single fact going to prove it; and for all that is shown by the bill, this fact might have been ascertained and proved at the trial. Their ignorance of the fact is no ground for equitable relief. The language of the court in Le Guen v. Gouverneur, 1 Johns. Cas. 495, is applicable: "The charge of fraud was in their knowledge, and if it did exist, the presumption is, that they had the proof in their power; for the presumption is, that a party is not ignorant of, or incapable of evincing, the truth of his cause. If the fact be so, it is incumbent on him to show it, in order to excuse the apparent neglect, and support his claim to an exception in his favor. In the present case, there is no circumstance alleged, from which it can be reasonably inferred, that the respondents could not with proper diligence have possessed themselves of evidence of the fact, if such was the fact, in the trial at law, and no such pretence is alleged in their bill." The bill then is bad, because it does not allege affirmatively, that this evidence could not have been obtained in time for the trial; and because it does not allege that any diligence was used to obtain it; and that the

complainants have not been guilty of laches, or negligence, in respect to it; nor does it even allege how this fact came to their knowledge. Dexter v. Arnold [Case No. 3,-856]; Respass v. McClanahan, Hardin, 352; Young v. Keighly, 16 Ves. 354; Livingston v. Hubbs, 3 Johns. Ch. 124; Bingham v. Dawson, 1 Jac. 243.

If we examine the statements in the bill, in relation to the loss of this vessel, it will appear that this fact, if it be one, might easily have been ascertained, and proved at the trial, and that they had the power then to prove. The fact alleged is, that the vessel was bored in her bottom. The existence of such a fact might easily have been ascertained by inspection. The suit at law was commenced in February and tried in October, a period of eight months intervening; this afforded time. The vessel, it is alleged, was sold, and so without the control of the defendant; and it is not alleged, that they were prevented from examining her. The complainants had an agent, Everett, it is alleged, on the spot, who was on board at the time the vessel is said to have been bored. While he was on board, she began, it is said, to leak in a most extraordinary and mysterious manner, which can only be accounted for by her being bored. Each one of these facts is alleged, and, moreover, the complainants knew or suspected that this vessel was fraudulently destroyed. They were then put on the inquiry for fraud. They had time, opportunity, an agent on the spot, and they knew that the vessel leaked in a manner, which, they say, can only be accounted for by her having been bored; and yet they never had that vessel's bottom examined, and never took any pains to ascertain whether any injury had been done to her. If the rule were contrary, and plaintiff was held to show, to get this relief, that he had all the means in his power to obtain this evidence, and neglected to use them, the bill would make out a good case.

Another ground of demurrer is, that the bill seeks a discovery, which may subject the defendant to a criminal prosecution. As to the discovery sought, this is undoubtedly good cause of demurrer: and if the bill is so framed that the defendant is not bound to answer it, or any part of it, then it is bad on general demurrer. Story, Eq. Pl. 438, 452. The offence charged is punishable by our laws with death. It appears from the allegations of the bill, if they are true, that the defendant, being the owner of this vessel, did, on the high seas, wilfully and corruptly destroy this vessel with intent to prejudice the insurers, by intentionally casting her ashore, and then consummated his purpose by boring; thus bringing the defendant within the scope of Stat. March 26, 1804, § 1. The idea of seeking a discovery by a bill in equity, which may subject the defendant to the loss of his life, is abhorrent to all the principles of law and equity, which are recognized in the courts of England and this country.

Mr. Peabody, for plaintiffs.

The objections made by the counsel for the defendant, are to the substance of the bill, and it is argued, that, upon the complainant's allegations, he has no case. For the purpose of deciding the present question, all the allegations in the bill are to be taken as true and well stated. The allegations in the bill are in substance, that the defendant with a fraudulent design misrepresented the value of his vessel when he applied for insurance. That after he sailed from St. Johns, he carelessly navigated, and voluntarily run his vessel on to Mud island. That he afterwards bored the vessel, or caused her to be bored, and thereby caused her to fill with water; and thereupon caused her to be surveyed, condemned, and sold; and thus occasioned the loss of her. That he sued the defendants, and they, being ignorant of all the matter aforesaid, were obliged to submit to a judgment against them, &c. That all these fraudulent doings came to the knowledge of the defendants, since the said judgment was rendered. And the bill prays, that Fields should repay the amount of the judgment, that the judgment may be decreed void, and for other and farther relief.

The defendant's objections are: 1st. That the bill charges a crime for which the defendant should be indicted; and it shows no case for remedy in law or equity. That a crime cannot be the ground and substance of a suit. 2d. That the bill is brought to set aside a judgment, and shows no sufficient cause. That it is like a bill of review.

By the English law, it is in some cases said, if a man commits a felony, and thereby injures another man, or obtains his property, the injured man may not sustain his suit for damages against the felon, until he is prosecuted and convicted or acquitted. But this court will not be governed by English statutes. The object of this rule of law is to induce prosecutions for offences. But the supreme judicial court of Massachusetts says, it is doubtful if such be the law in England, and it certainly is not law in this country. Boardman v. Gore, 15 Mass. 336. The doctrine that no civil action lies where the injury sustained is occasioned by crime, by common law, is not universally true (as our court believe) in England. It is only true in cases of robberies and larcenies, which, by the common law, are felonies. Another reason for the rule may be, that, by common law, the act of felony forfeits all the felon's property to the crown, and it is fruitless to give an action, where there can be no property to satisfy a judgment. Such reasons do not exist with us. Actions are everywhere sustained, in a variety of cases, where crimes occasioned the damages sued for. Such, among others, are actions for slander, and assault and battery.

The English cases referred to, are cases, where a remedy is sought for damages resulting immediately from the felony, as for a felonious assault and battery, &c. Ours is not a similar case. We seek relief, by having money paid back, which was wrongfully recovered; and to vacate a judgment obtained wrongfully, by suppressing facts. We do not allege, that the judgment was a crime. In this country, if A. make his note and forge the name of B. thereon as endorser, and sell it to C., at law, C. may maintain an action against A. on the note, or for money paid, though the forgery of B.'s name was the only inducement to C. to part with his money.

Again; it is the most common office of a bill in equity to seek for indemnity for frauds. Thus, money obtained by misrepresentations, or fraudulent papers, is recovered by proceedings in equity. So, also, fraudulent deeds are canceled, and lands obtained by them are recovered by decrees in equity. So, equity grants relief not only against deeds, writings, and solemn assurances, but against judgments and decrees obtained by fraud and imposition. Reigal v. Wood, 1 Johns. Ch. 402. Thus, where a deed was obtained of the plaintiffs by fraud by B., who confessed judgment to H., and Robbins innocently, and for a good consideration, bought the judgment with a lien on the land obtained by the fraudulent deed; it was decreed, that Robbins, though ignorant of the fraud, must reconvey the land to the plaintiff. The land was thereupon discharged of the judgment, and a perpetual injunction laid against the execution of the judgment on that land. The fruits of the judgment were restored to the plaintiff; but, as the judgment being by H. v. B. might be good, it was not revoked, but left to be satisfied on B.'s property, if it could be found. Livingston v. Hubbs, 2 Johns. Ch. 512. So, where a judgment, which had been paid, was fraudulently kept alive, and satisfied by taking the plaintiff's land; the defendants, who were assignees of the judgment, were decreed to release the land to the owners, to deliver up possession, and to pay rents and profits, and for waste. Troup v. Wood, 4 Johns. Ch. 228. Fraud and damages, coupled together, entitle the party to relief in equity. Bacon v. Bronson, 7 Johns. Ch. 194. And, indeed, a court of equity has an undoubted jurisdiction to relieve against every species of fraud. But fraud is so various, that it is difficult to enumerate and classify all the cases where the court will relieve. 1 Story, Eq. Jur. 188, 189.

The defendant says that the plaintiff must show that new matter has arisen since the trial; or that new proof has come to light which could not possibly have been used at the trial, and that the complainants could not, with due diligence, have ascertained and proved the new fact at the hearing; or otherwise the bill is bad. The bill alleges the frauds before named: avers that at the trial, they were unknown to the plaintiff; and that they have discovered them since the trial; and all this is admitted by the demurrer; or, for the purpose of the present hearing, are to be considered true.

The defendants professed to object that the bill is, in substance, bad; it was not supposed they would take exceptions to forms, which, if well taken, might require amendment. But we insist that the allegations in the bill are sufficient. It is not necessary in the bill to state the history of the discovery of new facts proving a fraud, which were not suspected at the time of the trial, nor the various efforts then made to discover the true history of the case. It will be enough to show, on the trial of this case, that due diligence was used at the former trial, and that such facts, showing a gross fraud, which was not then supposed to exist, have since been discovered.

What was proved at the former trial seems to us to have no bearing on the question now submitted to the court. If the plaintiffs show, that the defendant bored twenty holes through the sound and solid plank of the bottom of the vessel, and thus sunk the vessel, and that such proceedings were unsuspected, until the repairs of the vessel were undertaken, some time after the former trial, we think it will be for the court to decide when the evidence shall be presented, (but not now), whether those injuries could with due diligence have been discovered, before the former trial. The plaintiff was bound, on the former trial, to use all reasonable diligence: not all possible diligence. For by all possible diligence, such as cutting up a vessel, every latent defect or injury in her could at any time be discovered. But to present now, as far as practicable, every question, tending to show, whether the plaintiffs can maintain any bill, we admit, that on the trial of this case, it will appear, that on the former trial, the defendants alleged in defence the misrepresentation of the value of the vessel; and the attempt and design to cast her away on Mud island, and failed to prove them. But we aver, that the distinct fraud of boring the vessel was then alleged or suspected by us; and we admit, that if an unsuccessful attempt to prove a fraud at the former trial, takes from the plaintiffs the right, now to show the same or other distinct and more gross frauds, we have no case.

We think this bill is not analogous to a bill of review, and that the authorities cited on that subject are inapplicable. We think this is a case, merely of seeking relief from the consequences of a fraud; that the power of the court to give relief in such cases is so well established, that it is needless to cite cases to show it. The objection, that the bill seeks to make the defendant criminate himself, is not valid. Bills very generally charge fraud, and frauds are generally crimes either at common law, or by statute.

The defendant is always called on to answer the charges. If the latter objection is well founded, all bills in equity, charging fraud, are illegal, for they all seek to make the defendant criminate himself.

STORY, Circuit Justice. This case comes before the court upon a demurrer to the bill; and, of course, the demurrer admits the truth of the statements made in the bill, at least for the purposes of the present argument. The bill asserts, in substance, that the judgment recovered in this court upon the policy of insurance in the case, was procured by the fraud of the defendant Fields, which has been satisfied; and that the loss of the vessel, upon which the recovery was had, was occasioned by the fraud of the defendant, in fraudulently casting away the vessel, and also in fraudulently boring holes in her bottom. There is, also, another distinct allegation of a fraudulent misrepresentation of the value of the vessel insured, at the time when the policy was underwritten. The bill then goes on to allege, although not in a very precise and accurate form, that at the trial of the cause in this court, the plaintiffs were "uninformed of the fraudulent intentions and practices of the said Fields," stated in the bill, and "were unable to prove the same, which were by the said Fields fraudulently suppressed and concealed," and, thereupon, the verdict was rendered against the plaintiffs. The bill farther alleges, that since the payment of the judgment, "they, for the first time, discovered and were informed of the boring of the holes in the said vessel, herein described, the same concerning;" and, therefore, prays the interposition and relief of the court in the premises. Now, upon this posture of the case, all these allegations of misrepresentation and fraud must be taken to be true; and if they are, they certainly do present a strong appeal to the justice and equity of the court, unless solid grounds can be established to repel the conclusion.

What then are these grounds? No just objection exists as to the jurisdiction of the court, because it is a suit between an alien on one part, and a corporation, all of whose members are citizens of some one state in this Union, on the other part; and, besides, this is a case to overhaul and set aside a judgment of this court, which, perhaps, no other court is competent to do to the same extent, and with all the same beneficial consequences, as may be here attainable.

The first objection urged against the bill, is, that it charges the defendant, Fields, with a crime, punishable, both by our law and the English law, with death; and that, under such circumstances, the bill is not maintainable. Now, in the first place, although, if the charge in the bill be of a public crime committed by the party, that may constitute a good ground against compelling him, personally, to a discovery thereof; yet it is by no means a sufficient reason in all cases, why, if the fact is made out by other proofs, the plaintiffs may not well be entitled to relief. It is by no means true, as a general proposition in the common law, that, because the act is a public crime, therefore the civil rights of other parties affected thereby are merged or suspended by the rights of the government to punish the same, even when the crime is a felony. The most that can be said, is, that the common law requires, that before the party, injured by any felonious act, can seek civil redress for it, the matter should be heard and disposed of before the proper criminal tribunal, in order that the justice of the country may be first satisfied, in respect to the public offence. But after a verdict of acquittal or conviction, and a judgment thereon, that judgment is so far conclusive in any collateral proceeding, quoad the subject-matter, that the objection is thereby removed to bringing that, sub judicio, in a civil action, which was the proper subject-matter of a criminal prosecution. So the doctrine was laid down by Lord Ellenborough, in the case of Crosby v. Leng, 12 East. 409. in which he was supported by the whole court. In Boardman v. Gore, 15 Mass. 331, the supreme court of Massachusetts held, that this doctrine had not been adopted in our country. Upon that point, it is not now necessary to pronounce any definitive opinion, although certainly the reasoning of the late learned chief justice, upon that occasion, has great force and strength in it. In Cox v. Paxton, 17 Ves. 329, Lord Eldon recognized the doctrine of the courts of common law as strictly applicable in equity. But then the case there, was, that the plaintiffs made this title to relief against a third person, through a felony committed against them by their own clerk, by an embezzlement of their moneys intrusted to him, and vested by him in certain life policies of insurance, which had been transferred by the clerk to the defendant, alleged in the bill to be with notice. Lord Eldon, upon a demurrer, thought the bill not maintainable, upon the ground that the relief was to be reached through the felony of the clerk, and that an action at law would not lie to recover the moneys embezzled, if they had been in the hands of the defendant. That might be true, if the party had not been convicted or acquitted upon a criminal prosecution therefor; and there was no such allegation in the bill. But if he had been, I profess not to see very distinctly what real objection lay to the bill. But upon this case, also, I give no opinion; because the present stands upon considerations wholly independent. In the first place, the plaintiffs here do not claim title through any felony committed by the defendant to maintain an original suit. Their case is the converse of that of Cox v. Paxton, 17 Ves. 329; for theirs is purely matter of a defence to a suit brought originally by the defend-

ant, in which he deduced his own title to recover, through an asserted fraudulent and felonious act on his part. There can be no possible doubt, that, if the plaintiffs had, in the suit at law, known the real facts, and had sufficient proofs thereof, they might have set up that very felony as a bar to the plaintiffs' recovery in that suit. It is a case completely out of the mischiefs of the rule at the common law; and it would be a monstrous doctrine to assert, that any person claiming a right to an action founded upon his own fraud and felony, could avail himself of it, and thus, by his own turpitude, exclude the other party from a perfect defence to the action. To such a case, the maxim of retributive justice is most properly addressed: "Allegans suam turpitudinem non est audiendus." Now, the very reason, upon which the present bill is founded, is, that this, a perfect and valid defence at law, was, by the fraudulent concealment of the defendant, and the total ignorance of the plaintiffs in the facts, incapable of being set up to the original action; and the recovery was, therefore, inequitable and iniquitous. It would be against all the principles of a court of equity, to allow one party to practice a fraud upon another innocent party, and by another act of fraudulent concealment recover a judgment against him founded upon the prior act; and then to be permitted to assert this double iniquity as a bar to all equitable relief against the judgment. Upon this ground alone, the objection would be unavailable.

But there is another and still more urgent and decisive answer to the objection. The bill states a case, where the felony, if any, was committed on board a British vessel by a British subject, within British waters. It is, of course, therefore, solely punishable by the British laws. Now, although this court may judicially take notice of the common law and the crimes recognized therein; yet, as to the statute law of Great Britain, now in force, or created since the Revolution, it is difficult to perceive how it can be judicially taken notice of, or established before the court, except in the same manner and by the same proofs as the criminal laws of any other foreign country. Even supposing the present statute law of Great Britain could be judicially taken notice of by the court, and the offence supposed be a felony by that law, it would not change the posture of the present case; because the criminal laws of a foreign country cannot be of any force, or be in any manner enforced in any other country, unless recognized by some treaty stipulation. Now, the common law of England does not apply the rule that a civil action cannot be maintained for any injury or trespass which involves a felony, unless it be a felony committed in, and cognizable and punishable by the courts within the realm. If it be an offence committed in a foreign country, there can be no merger or suspension of the civil

rights of the injured party, until there has been a conviction or acquittal of the offender, for the plain reason that there can be no trial thereof had in the tribunals of England; and, consequently, in such a case, the whole policy of the rule is completely swept away. Upon either ground, therefore, the objection fails of support.

Another objection is, that, although the bill charges that the policy was procured by a fraudulent over-valuation, yet, it does not allege that the facts relied on to establish it were unknown to the plaintiffs at the time of the trial; and that even if these things were properly alleged in the bill, yet they constitute no ground for equitable relief. Now the bill is certainly not pointed and stringent as to the want of knowledge on the part of the plaintiffs, as it should and ought to have been. It is not improbable that the concluding allegation in the bill, that since the payment of the judgment, the plaintiffs were for the first time informed of the boring of the holes, &c., "and of all things herein alleged the same concerning," was thought to be sufficient to cover this particular matter, although it certainly does not. This charge, therefore, of the bill, if it constituted the whole equity, would, by reason of this defect, be insufficient to sustain it. But, if the charge were rightly framed, with the proper allegations, it would, in my judgment, constitute a complete title to relief. A fraudulent over-valuation and misrepresentation of the value of the subject-matter of insurance will avoid a policy of insurance; and if unknown at the time of the trial and judgment, is a proper case for equitable interference. Over-valuation, I agree, is no necessary proof of fraud; and far less, a positive statement of a sale bargained for at a high price in the port of destination. But there may be very cogent circumstances, from which fraud may be inferred, where the cause otherwise labors under strong suspicions. Besides; the demurrer with reference to this matter is merely argumentative, and addressed to the sufficiency of the proofs, and, therefore, seems in this respect to be of the character of a speaking demurrer. However, if the other charges in the bill can stand, and sustain it, the demurrer must be over-ruled.

Then, as to the main objection, on the ground of the fraudulent casting away of the vessel, and especially of boring holes in her, it is suggested, that in point of fact, the defence of fraud was made at the trial, and did not prevail. Assuming that it was so, still, as the bill admits nothing of this sort, but charges that the facts were unknown until after the judgment, this court cannot upon demurrer travel out of the allegations of the bill. The office of a demurrer is to bring before the court the right to maintain the bill upon the admission pro hac vice of the entire truth of all its allegations; and the court cannot look aliunde to search out or conjecture, what other facts might or did exist

to defeat the bill. That is the proper office of a plea or answer. But the parties admit, for the sake of the argument, that the point of fraud was made at the trial; but that it was in effect founded upon circumstances of suspicion, not sustained by any clear and satisfactory proofs; and that the boring of the holes was not known or suspected at the trial; and that it was not and could not therefore then be a matter of controversy. Now, I agree that mere cumulative evidence to the fact of fraud or any other leading fact not discovered since the trial, will not ordinarily constitute any just ground for the interference of a court of equity to grant relief, for the solid reason that it is for the public interest and policy to make an end to litigation, or, as was pointedly said by a great jurist, that suits may not be immortal, while men are mortal. But I do not know that it has ever been decided, that, in an assignable case, where the defence has been imperfectly made out at the trial, from the defect of real and substantial proofs, although there were some circumstances of a doubtful character, or some presumptions of a loose and indeterminable bearing before the jury, and afterwards newly-discovered evidence has come out, full, and direct, and positive, to the very gist of the controversy, a court of equity will not interfere to grant relief and to sustain a bill to bring forth and try the force and validity of the new evidence. My recollection does not furnish me with any case, where a doctrine so strict and so binding has been positively upheld and pronounced. The disposition of courts of equity, upon this head, seems, as far as I can gather it, not to encourage new litigation in cases of this sort; but, at the same time, not to assert their own incompetency to grant relief, if a very strong case can be made out. A fortiori all reasoning upon such a point must be powerfully increased in strength, when it is applied to a case which, upon the face of the bill, is composed and concocted of the darkest ingredients of fraud, if not of crime. At all events, it would be an extraordinary course for a court of equity to pronounce such a judgment in such a case, upon a demurrer, rather than to retain it for a final adjudication upon a hearing of the merits, where the full pressure of the whole facts, and the weight of all the attendant circumstances known at the trial and discovered since, may be fully brought before it. While the court would not be disposed lightly to interfere with the verdict of the jury, upon the point of fraud, it might well deem itself at liberty to look deeper into the case upon new evidence which might justly, if known at the time, have changed the verdict of the jury.

I agree, that there is a strong analogy between bills of this sort and bills of review, as to newly-discovered evidence; although there may possibly be some ground for a distinction, in favor of the former bills, founded upon the consideration, that they approach somewhat nearer to the analogy of motions for a new trial. The subject was a good deal considered by this court in Dexter v. Arnold [Case No. 3,856] and Wood v. Mann [Id. 17,953], where it will be found, that the principal cases are reviewed. It does not appear to me, that it can be laid down as a positive rule, that in no case whatsoever ought relief to be granted, however stringent the evidence may be, which goes to establish the fraud asserted, but imperfectly brought out at the trial, from the mere defect of evidence without laches of the party seeking relief in equity. But in the present case, I am not prepared to say, that the very fraud now preferred in the bill was identical with that propounded at the trial. Fraud in casting away a ship may be very distinguishable from fraud in destroying her by boring holes in her bottom. Both may concur and be concomitant circumstances of the same general transaction: but they may also constitute distinct and independent transactions and matters of defence. How can a court of equity, upon a dry demurrer, assert, that they are the one, rather than the other? If I were compellable to decide upon the face of this bill, what in this case was the real proximate cause of the loss and destruction of the vessel, I should say that it was not the casting away of the vessel, but the boring of the holes in her bottom. But it is unnecessary to decide that, because upon a demurrer, in odium spoliatoris, the court will not decide a matter of such importance in his favor, but reserve it for a final hearing upon the merits.

Objections have been urged to the frame of the bill, in other respects; that it does not contain any allegations of due diligence to ascertain these facts before the trial, and that the plaintiffs have lain by and been guilty of gross negligence and laches. That may be or may not be made out upon a final hearing of the merits. But the bill asserts that the boring of the holes was unknown until after the judgment; and the court cannot presume that it could by any prior, seasonable diligence, have been established. If it might have been discovered by such vigilance, it is more properly a matter of defence, than of allegation in the bill. Upon the whole, my opinion is that the demurrer ought to be overruled.