## BURNLEY V. RICE, ADAMS & CO.

An application for a new trial upon the ground of newly discovered evidence, must show that it was not for the want of due diligence that the evidence was not sooner discovered ; and should also show what diligence the party had used to procure evidence and prepare for trial.

The newly discovered evidence should be set out *verbatim*, just as it can be testified to in Court, and be subscribed and sworn to by each of the newly discovered witnesses, or a satisfactory excuse shown for the absence of the affidavit.

Where a party goes into chancery after a trial at law, he must be able to impeach the justice and equity of the verdict, and upon grounds which either could not be made available to him at law, or which he was prevented from setting up by fraud, accident, or the wrongful act of the other party, without negligence or other fault on his part.

Voluntary absence from the State is no excuse for want of diligence.

Appeal from Brazoria. Tried below before the Hon. J. H. Bell.

Rice & Adams, merchants in Galveston, doing business under the name of Rice, Adams & Co., made advances and furnished supplies, to a large amount, to Love & Burnley, partners in the ownership and cultivation of a plantation in Brazoria county—the advances and supplies being for the use and benefit of the plantation. For the security of Rice, Adams & Co., Love executed a deed of trust on his half interest in the plantation, and also for himself and Burnley executed a mortgage on the crops to be grown on the plantation, as well as on the sugar-mill, kettles, &c., to be purchased with the advances furnished by Rice, Adams & Co.

Love & Burnley having failed to reimburse Rice, Adams & Co., for their advances, &c., according to agreement, and having executed various deeds of trust on the plantation, and

parted with their respective interests therein by various sales, Rice, Adams & Co. brought suit for the use of Julius Frederich (to whom their claim had passed by assignment) against Love & Burnley at the Fall Term of the District Court of Brazoria county, in the year 1852, joining in the suit, as parties defendant, all the purchasers of the plantation, mill, &c., as well as the trustees named in the various deeds of trust executed by Love & Burnley, and the purchasers of the property.

The cause was brought to trial at the Fall Term, 1855, and a verdict and judgment rendered in favor of the plaintiffs against Love & Burnley for the balance proved to be due from them ; and a decree made subjecting the sugar-mill and kettles to sale for the satisfaction of the judgment, and allowing Sharp, the purchaser of the plantation, mill and kettles, &c., upon payment of the judgment, to be substituted to the rights of the plaintiffs therein, as against his co-defendants Love & Burnley.

Burnley sued out a writ of error and the case was brought before this Court at its last term at Galveston, and the judgment of the Court below affirmed.

Burnley then made an application for an injunction and a new trial, which application was founded on allegations of surprise on the former trial, and of newly discovered evidence, supported by the affidavits of Love and Jones, and by sundry bills, accounts and letters annexed to the petition as exhibited.

It was also claimed that a credit of some $800 had not been allowed, and that the judgment sought to be enjoined was therefore in any event excessive

His Honor, the District Judge, upon the application of Burnley, granted the injunction, and also awarded a new trial, and made an order that the case be reinstated on the docket.

At the following Term of the Court, all the defendants who were material parties to the proceeding, appeared by their attorneys, and filed—first, exceptions to the petition ; secondly, their separate answers ; and thirdly, a motion to dissolve the

injunction and dismiss the petition, which motion was predicated on the want of equity in the petition, on the demurrer or exceptions, on the sworn answers to be used as affidavits, and on other affidavits filed therewith. The answers of Frederich and Sharp, who were the real parties defendants, were only sworn to by them ; the answer of Rice was also sworn to ; the answer of Adams was not verified by his own affidavit, for the reason set forth in an accompanying affidavit of his attorney. There were no answers filed for the other defendants, who were merely formal parties to the suit.

The case being called for trial, a motion by the plaintiff to strike out the answers of Rice and Adams, because not sworn to, was overruled.

The plaintiff moved—first, for an order that a commission issue to the territory of Utah, to take the deposition of A. S. Johnston ; secondly, for a like order to take the depositions of Love and James ; thirdly, then offered W. P. Ballinger to prove the deed of trust from Burnley to Love and Ballinger, and the sale by them to Sharp ; fourthly, for leave to withdraw the exhibits attached to the petition, in order to have them proved up by the above named witnesses ; and fifthly, for a continuance—this last motion being founded on an affidavit offered to be read to the Court.

The defendant's motion being heard by the Court was sustained, and judgment entered against the plaintiff and his sureties for the amount of the original judgment and costs, less the credit claimed by Burnley and conceded by the defendant, Sharp. Plaintiff appealed.

*Allen & Hale*, for appellant. I. A judgment, after the expiration of the term at which it is rendered, may be reopened and a new trial awarded, for sufficient reasons, by an application to the District Court, based upon equitable grounds.

(Stor. Eq. Jur. p. 887 ; Gross v. McClaren, 8 Tex. R. 243 ; Spencer v. Kinniard, 12 Tex. R. 187 ; Gorman v. McFarland, 13 Tex. R. 238 ; Mussina v. Moore, 13 Tex. R. 8.) And if the judgment should not be reopened, the execution and all proceedings upon it may be stayed by injunction, if it is shown to have been obtained by fraud or corrupt practices on the part of the judgment creditor. This ground of equitable interference is entirely distinct from the other. (Story Eq. Jur., Sec. 885 ; 3 Daniel Ch. Pr. 1843 ; Marine Ins. Company v. Hodgson, 7 Cranch, 332 ; Hart. Dig., Art. 1599.) In the first case the remedy is administered, by granting a new trial ; in the second, the judgment stands, but its execution is perpetually enjoined. This distinction should be kept in mind in weighing and applying the allegations of the petition. A new trial is asked upon the ground of newly discovered evidence offered to sustain a just defence ; a perpetual injunction is sought, because the judgment was obtained by the conspiracy, treachery and fraud of the plaintiffs, and two of the defendants in the original suit.

II. First as to the application for a new trial on the ground of newly discovered evidence. The general rule is, that in order to obtain a new trial for such cause, the evidence must have been discovered since the judgment. It must be shown to be material in its character, so as probably to produce a different result upon the new trial : it must not be merely corroborative, it must go to support some point in issue, upon the former trial. It must not simply impeach the credibility of a witness, and it must not have been within the reach of the party, by the use of reasonable diligence, before the judgment. If these requisites are answered by the proposed evidence, the application will be sustained.

The diligence which is necessary is not extraordinary, exemplary and unusual diligence ; but ordinary, natural, reasonable care, such as a prudent man could ordinarily take in the management of his business. (Story Eq. Plead., Sec. 414 ;

Burnley  v.  Rice,  Adams  &  Co.

3 Daniel Ch. Pr. 1734 ; and cases Cummings v. Kennedy, 49;
9 March, 642–5; 3 Grah. & Wat. on New Tr. 1467–8; 6 Johns.
Ch. 482 ; 9 Ala. 120 ; 2 Ala. 121, etc.)   Men are not expected
or required to use superhuman efforts, or to ransack all the
sources of knowledge ; if so, there could never be a successful
application for a new trial.   The power of granting this relief
is exercised by Courts, for the purpose of permitting the hon-
est, attentive and defrauded litigant to protect himself against
an unconscientious judgment, obtained by his own failure to
find, or to produce the necessary evidence.   It is designed to
relieve the suitor from the consequences which extraordinary
diligence would have prevented ; it is exercised with reference
to human nature and action as it is, not as it might be.   If a
party has acted prudently, and with natural discretion and
care, and is yet surprised by an unexpected trick, or by treach-
erous devices of his opponent, it will not be said by a Court
of equity that he ought to have anticipated the trick or the
treachery and sought for evidence to protect himself.

III. The allegation of fraud in procuring the judgment is
positive and precise.   It is alleged that the plaintiffs in the
original suit, not only obtained the mortgage and acknowledg-
ment from Love, contrary to the original understanding, by
fraudulent practices, and that they never claimed anything, as
a matter of right from Burnley, and only requested what they
called his share ; but that, knowing that their claim against
him was unjust and unfounded, they used their manufactured
evidence against him, without giving him notice by any demand
or otherwise.   If they obtained the judgment by such means,
or by withholding a matter, peculiarly within their own know-
ledge, and which it was unconscientious to conceal, the judg-
ment should be enjoined.   (3 Dan. Ch. Pr. 1734, 1843, 1840–1,
and cases before cited.)

IV.   The cause ought not to have been finally determined
upon a dry demurrer.   The injured party should at least have

had an opportunity to prove the fraud ; the conscience of the Court should have been enlightened by the truth before an absolute decision. Even if the injunction had been dissolved, the cause should have been retained. Upon this point, as well as the other, we wish to call the particular attention of the Court to the last three opinions of Judge Story in the case of Ocean Ins. Co. v. Fields, 2 Story's R. 59, 77, 80, which seem to us exactly applicable to a case like the present.

*Sherwood & Goddard*, for appellees.   The first five errors assigned by the plaintiff relate to the action of the Court below on his various motions referred to in the foregoing statement of facts, and plainly require no serious notice.

The answers of Rice and Adams, even if to be regarded as not sworn to, were not for that reason to be stricken from the files.

The testimony sought by the plaintiff had nothing to do with the hearing of the defendants' motion to dissolve the injunction, and dismiss the petition for want of equity. Upon the hearing of this motion, the petition (including the affidavits and exhibits made a part of it) had to stand on its own merits, and if defective in itself, and insufficient as a foundation for the relief therein sought, it could not be helped out by any extraneous aid.   Besides, the affidavits of Johnson and James (whose testimony was referred to in the petition, and who were there stated to be in this State at the time of making the application for the injunction and new trial) should have been attached to the petition, or their absence accounted for.   The testimony of Love was already before the Court, as his affidavit was attached to the petition.

The defendants' right to a hearing of their motion certainly could not be defeated by an application for a continuance.

All of these motions were irrelevant, frivolous and premature.

The 6th error assigned, is the refusal of the Court to admit

the testimony of Mr. Ballinger after the argument of the defendants' motion had commenced.

This evidence was wholly immaterial, as will fully appear in a subsequent part of the argument—and also, incompetent to prove the facts sought to be established by it. It will suffice to say here, that it was offered, neither in the proper form, nor at the proper time. It should have been in the shape of an affidavit attached to, or accompanying, the petition; for, as before stated, the application for the new trial was to be considered by the Court just as it had been made by Burnley in his petition and exhibits, and not as he might afterwards patch it up. This testimony was not offered to rebut the affidavits filed in behalf of the defendants, but was, at best, merely cumulative evidence to sustain certain allegations in the petition. Neither was any proof offered that the facts to be testified to, or the means of proving them, were newly discovered; on the contrary, from their very nature, they must have been known to Burnley, if not to his attorneys, long before the previous trial. It was also within the discretion of the Court to hear, or refuse to hear, further testimony after the argument of the motion had commenced.

The seventh and eighth errors assigned, viz : that the Court erred in rendering judgment for the defendants, and in overruling the motion for a new trial, require an examination of the merits of the plaintiff's application. as presented in his petition and exhibits.

By way of introduction to this examination, we collate the following general principles governing all such applications, whether made by motion, by petition, or by bill of review :

I.   Applications for new trial, of whatever kind, and however made, are always "regarded with jealousy and construed with great strictness." (3 Graham & Waterman on New Trial, 1021, 1083, 1457 & 1461 ; Tex. R. *passim.*)

II.   When such applications are grounded on surprise, the strictest showing of diligence on the part of the applicant is

required ; the slightest negligence on his part will be fatal to the application. (3 Gr. & W. 921 *et seq.*, 963 *et seq.*, and cases cited.) Any negligence of the attorney or agent of the applicant is the same as the negligence of the applicant himself. (Ibid, 922–930, 1520 ; Sneed v. Town, 4 Eng. (Ark.) R. 535 ; Yates v. Monroe, 13 Ill. R. 212 ; Patterson v. Mathews, 3 Bibb, 80.)

And the depending upon one's adversary to produce evidence, "is the most unpardonable negligence"—"foolhardy in the extreme." (3 Gr. & W. 939, 941 ; Chiles v. Dedman, 3 A. K. Marsh. 463 ; Gentry v. McKeheu, 5 Dana, 34.)

A new trial will not be granted on the ground of surprise when the declaration and exhibits give notice. (Smith v. Morrison, 3 A. K. Marsh, 81.)

The introduction of testimony which is the natural and obvious proof of the very gist of the action, cannot be relied upon as a ground of surprise. (3 Gr. & W. 967 ; Burr v. Palmer, 23 Vermont, 254.)

III. When the application is grounded on newly discovered evidence :

1st. That evidence must be new to the party.

2d. It must have been discovered since the trial. Relief is always refused, if the evidence might have been used on the former trial, or if the complainant had notice that it was in the power of the other party to produce it. (3 Gr. & W. 1487, 1536.)

3d. The applicant must show that it is not owing to the want of diligence that the evidence was not sooner discovered. (Id. 1026 *et seq.*; Maddin v. Shapard, 3 Tex. R. 49.)

4th. The evidence must be so material that it would probably produce a different verdict, if the trial were granted— "must be of such paramount nature and unerring character as to preponderate greatly, or have a decisive influence upon the evidence that is to be overturned by it." (3 Gr. & W. 1041 *et seq.*, 1537, 1541 *et seq.*; McDaniel v. Will, 2 Bibb, 250 ;

Findley v. Nancey, 3 Monroe, 400 ; Glover v. Woolsey, Dud-
ley's Geo. R. 85 ; Yancey v. Douner, 5 Littell, 10 ; Fabs v.
Shackleford, 1 Litt. 35 ; Ables v. Donley, 8 Tex. R. 331.)

5th. The evidence must not be cumulative—must not go to
a point litigated, nor to a fact known to the party, at the trial.
(3 Gr. & W. 957, 1046, 1540, and references.)

6th. The affidavits of the newly discovered witnesses must
be produced, or their absence accounted for. " The newly
discovered evidence should be set out *verbatim*, just as it can
be testified to in Court, and be subscribed and sworn to by
each of the newly discovered witnesses," (3 Gr. & W. 1071 ;
Glasscock v. Manor, 4 Tex. R. 7.)

IV.    Whether the application is founded on surprise, or on
newly discovered evidence, not only is the strictest diligence
required of the applicant, but the diligence used by him in the
preparation of his case for trial must be stated, that the Court
may judge of its sufficiency.    (3 Gr. & W. 1026, 1071 ; Swee-
ney v. Jarvis, 6 Tex. R. 42.)

Nor is absence from the State an excuse for the want of dili-
gence.    (Simpson v. Simpson's Ex'rx., 3 Litt. 141.)

V.    Even when the showing is in all respects sufficient as
to diligence, and the materiality of the newly discovered evi-
dence, a new trial will not be granted unless it would be against
good conscience to enforce the judgment.    The complainant
must be able to impeach the justice and equity of the verdict.
(3 Gr. & W. 968, 1488–9, 1490, 1538 ; Vilas v. Jones, 1 Com-
stock, 274 ; Kearney v. Smith, 3 Yerger, 127 ; Spencer v. Kin-
nard, 12 Tex. R. 180.)

The foregoing principles govern (as we have said) all appli-
cations for new trials, whether made by motion, by bill for a
new trial, or by bill of review.    The only difference between
the application by motion and that by bill, or petition, after
the adjournment of Court, is, that the latter will be viewed by
Courts with less favor, and more rigidly scrutinized.    If the

relief could have been obtained by a motion for a continuance, or for a new trial, and was not sought in either of those ways, it will not be granted when applied for by petition, however meritorious in other respects the application may be. (Goss v. McClaren, 17 Tex. R. 121 ; 2 Bay. 267.)

WHEELER, J. The complainant bases his right to relief upon two grounds ; 1st. Newly discovered evidence ; 2nd. Fraud in obtaining the judgment.

In respect to the first ground, it might be a question whether the newly discovered evidence was not cumulative. Its object was to prove that this party was not liable to be charged in the original suit as a co-partner with Love, his co defendant therein ; that the latter had no authority to bind him for the advances made by the plaintiffs. That was the main question at issue, to which the evidence was directed upon the trial. (3 Gr. & W. on N. Trials, 1046, 1052, 1053.)

But a clearer and more decisive reason for refusing a new trial on the ground of newly discovered evidence is the utter want of diligence in preparing for the trial. All the most material evidence of which the party seeks now to avail himself to obtain a new trial, he shows to have been in the possession, or within the knowledge of his co-defendant. Yet no excuse is shown for its non-production upon the trial, except that this party did not know of it. But he does not pretend ever to have made inquiry, or sought information, of any one until long after the rendition of the judgment. He was absent from the country before, and at, and long after the trial; and that must be the explanation for his saying he could not have known of the existence of the evidence. What was there to prevent him from knowing? If his deed to Ballinger and Love and their conveyance to Sharp was material to prove that the partnership between himself and Love was, as he avers, " virtually dissolved " in 1849, did he

not know that he could prove those facts by the deeds and testimony of Ballinger ?   What prevented his being called as a witness, though Love, being a co-defendant, could not be examined ?   What prevented him from obtaining the accounts which had been rendered to Love, and the other evidence in his possession, which he thinks would have been so material to his defence ?   He professes to have known that the advances were charged to Love's individual account, and that the plaintiff's books would show the fact.   Why then did he not give notice to the plaintiffs to produce their books ; or prove by the accounts which had been rendered to Love, or other evidence, which it is impossible to doubt he might easily have obtained, to whose account the advances were charged ?   But instead of this he relied on the plaintiffs to produce their books of account, and thus furnish him with the evidence he desired. "To depend upon one's adversary to produce evidence, (it is said,) shows unpardonable negligence.   (Id. 939.)   The application should show that it was not for the want of due diligence that the evidence was not sooner discovered.   (Id. 1026 ; 6 Johns. Ch. R. 482.)   It should show what diligence the party used to obtain his evidence, and prepare for trial. (Id. 1071.)   The application does not show or pretend that any was used, or attempted to be used, or any excuse for the want of it ; except that the party was absent from the country, and communicated to his attorneys what information he had.  · But his voluntary absence from the country can be no excuse.   The only affidavit of a witness to any newly discovered fact at all material, which is produced in support of the application, is that of a co-defendant ; and there is no excuse offered for the failure to produce the affidavits of the other newly discovered witnesses.   The witness Johnson, (to obtain whose evidence, an application was made to put off the hearing until a commissioner could be sent to take his testimony in Utah,) is averred to have been in this State at the time of filing the petition.   It does not appear why his affidavit was

ηot then obtained. "The newly discovered evidence should be set out *verbatim*, just as it can be testified to in Court, and be subscribed and sworn to by each of the newly discovered witnesses," (Id. 1071,) or, at least, a satisfactory excuse should. be shown for the omission, or absence of the affidavit. Nothing of the kind is attempted; and the application upon this ground was manifestly insufficient.

Nor is it better supported on the remaining ground on which the party seeks relief; that of fraud in obtaining the judgment. The supposed fraud consisted in sueing, and obtaining a recovery of this party, upon a demand for which he was not legally (though it appears from the affidavit, on which he mainly relies, that he was equitably, in part, at least) liable; and the failure of the plaintiffs to furnish evidence which would have manifested his freedom from liability; and the further fact that his co-defendant had furnished evidence against him of which he was not aware, and without being himself aware, or taking the trouble to read the instruments he signed and know their import. It is scarcely necessary to remark upon the manifest insufficiency of allegations such as these to support the assumed ground of relief that the judgment was obtained by fraud. There is nothing shown to warrant a pretence that the plaintiffs practiced any artifice or deception upon the complainant in obtaining the judgment or that they suppressed or withheld any fact or the evidence of any fact sought to be obtained by him; or that they were in possession of any fact or evidence, not disclosed upon the trial, of which he was not aware, and could not have had the benefit by the use of the means which the law afforded him. There is, in a word, nothing shown to warrant the imputation that there was fraud practiced in obtaining the judgment. If broad, general and indiscriminate charges of fraud, combination and conspiracy were sufficient, without pointing to any single act or fact of a character to warrant the charge; or if the having obtained a judgment which the adverse party would.

Burnley v. Rice, Adams & Co.

undertake to show to be wrong and unfounded, or unjust, were sufficient to set aside a judgment, there would be few trials which would be final, and few judgments which might not be impeached and enjoined, or set aside for fraud. Law suits, as has been said, would indeed be immortal, while men are mortal. We have examined the case to which our attention has been called in Story's Reports, (Ocean Insurance Co. v. Fields, 2 Story, 59,) and perceive in it no analogy to the present.

It is needless to examine more in detail the evidence and grounds relied on for enjoining and setting aside the judgment. It manifestly appears by the plaintiffs' own showing, that although sued, and aware that he was sought to be charged as a co-partner with the other defendant, he remained abroad, made no preparation for trial, and gave no personal attention to the case, until after it had progressed to a trial, and judgment had been recovered against him. Then, for the first time, he set about obtaining evidence, which, if it could have been of any avail, he ought to have obtained before the trial. "It would be strange, indeed, if a party could wait till after judgment, and then insist on a remedy or defence, which might have been available, had it been put forward at the proper time. Where a party goes into chancery after a trial at law, he must be able to impeach the justice and equity of the verdict; and it must be upon grounds which either could not be made available to him at law, or which he was prevented from setting up, by fraud, accident, or the wrongful act of the other party, without any negligence, or other fault on his part." (Id. 1489; Bronson, J., in Silas v. Jones, 1 Comstock, 274.)

The complainant manifestly did not present a case which entitled him to equitable relief. His petition was therefore rightly dismissed and the judgment is affirmed.

Judgment is affirmed.