## TREFZ *v.* KNICKERBOCKER LIFE INS. CO. OF NEW YORK.

*(Circuit Court, D. New Jersey.    1881.)*

1. JURISDICTION—FRAUD.

A court of equity will grant relief against a judgment at law on the ground of fraud, whether the fraud was in the transaction, or the instrument on which the action arose, or in the trial and the manner of obtaining the judgment.

2. SAME—PRACTICE IN EQUITY—BILLS FOR A NEW TRIAL.

It is the practice in equity, when the prayer of the bill is for an injunction and for general relief, after a judgment at law, unless the case discloses some defence peculiar to courts of equity, and which would be unavailing at law, to set aside the judgment, and leave the parties to a new trial in the original forum.   In effect, such a bill is an application for a new trial.

*Coult & Howell,* for defendant.

*A. Q. Keasbey & Sons,* for complainant.

NIXON, D. J.   The bill is filed in this case by the complainant to set aside a judgment recovered in this court at the term of September, 1877, on the ground that it was obtained by fraud.   The defendant has put in a general demurrer, which admits all the material averments of the bill of complaint.   The only question, therefore, is, are these sufficient to maintain the suit?

The bill alleges that on the twenty-seventh of September, 1877, the defendant recovered a judgment against the complainant for the sum of $12,201.01, in an action of *assumpsit,* which was founded upon two policies of insurance on the life of her late husband, Christopher Trefz, one for $2,500 and the other for $8,500, both issued September 6, 1873, in favor and for the benefit of his wife, the defendant; that the policies on which the judgment was obtained had been received in exchange for two prior policies—one for $3,000, issued May 25, 1867, and the other for $10,000, issued March 18, 1868; that upon issuing the two later policies it was agreed, in writing, between the defendant and her husband and the complainant, that the statements in the application for the former policies were true, and were the basis for the contracts of the policies; and that it was expressly provided that the new policies were granted on the faith of said statements, and that if any of them were untrue, the said policies should be void; and that they should be void if the death of the insured should be caused by the habitual use of intoxicating drinks; and that among the statements that thus formed the basis of the new contracts, and on the faith of which they were made, were assertions

by the said Christopher that he was sober, and had never been sick, and had never had spitting of blood, or any of the other diseases mentioned in the said statements.

The bill further alleges that the complainant resisted the payment of the said policies, after the death of the insured, because it had reason to suspect that before and at the time of obtaining the first policies the said Trefz was an habitual drunkard, and had procured the policies by false statements, and had continued to be a drunkard after the later policies were issued, and that he brought about his death by the habitual use of intoxicating drinks; that in preparing for the trial of the case at law, it made every effort to obtain proof of these facts, but without success, so far as the matter of intoxication was concerned, but learned that he had been afflicted with sun-stroke, which he had concealed in obtaining the later policies, and that on the trial the complainant was obliged to abandon the defence of death by the habitual use of intoxicating drinks, and rely only on showing that the contracts were void by reason of the untruth of the statement of the insured that he was never sick, in which defence it was unsuccessful.

The bill then states that during the spring of 1880 complainant ascertained, on what is believed to be abundant proof, that the said Christopher, for a long time prior to 1873, when he obtained the new policies, had been a confirmed and habitual drunkard, and had greatly impaired his health by gross habits of intoxication, which rendered him liable to the sun-stroke, the concealment of which was the ground of defence urged in said trial; that the defendant, when the policies were renewed in her favor, well knew the physical situation and habits of her husband, and that the policies were obtained by the fraudulent concealment thereof; that the said habits of intoxication continued and increased constantly after the re-issue of the said polices, and caused the death of the insured during the year 1876; that he was in the constant habit of being drunk day by day, and became subject to *delirium tremens*, which rendered him very violent in his family, and rapidly undermined his health, and speedily caused his death; that the said defendant and the members of his household were perfectly aware of his condition, but expecting to obtain the amount of the policies from the complainant upon his anticipated death, she took pains to conceal his condition from the public, and especially from the agents of the complainant, who, as she knew, were making strenuous efforts to obtain proof of the facts which were suspected, but not actually known, in order that they

might be proved on the trial; that the physicians who had attended him, and who were well aware of his condition and habits, had died shortly before the trial, and she, knowing that the facts could not be reached through them, concealed as far as possible his true condition from the physicians who attended him towards the close of his life, and who were called as witnesses in her behalf; that she herself was a witness on the trial, and in her testimony studiously concealed the fact that he had been suffering with *delirium tremens* and spitting of blood, and that his death was caused by his habits of *intoxication,* and gave an account of his sickness entirely inconsistent with her own knowledge of his condition, and that she congratulated herself upon the successful concealment of these facts when the policies were obtained and the payment recovered; and that, upon the discovery of the foregoing facts, the complainants obtained the affidavits of Christina Sitzman, Catherine Engle, and Frank Ehehalt, made in April, 1880, and annexed to the bill of complaint, with the view of obtaining a new trial, and made application to the court for the same, which the court declined to grant, in view of the pending writ of error.

The prayer of the bill is that the judgment against the complainant may be declared to have been obtained by fraud; that the defendant may be restrained by injunction from causing any execution to be issued thereon, or from enforcing the same in any manner against the complainant, and that the complainant may have such other and further relief as shall be agreeable to equity and good conscience.

The general ground on which relief is sought in this case is that the two policies of insurance, on which the judgment is founded, were obtained by the fraud of the defendant and her deceased husband; that the fraud was unknown to the complainant at the time of the trial, although it was suspected, and efforts were made to find evidence of it; and that it was known and concealed by the defendant on the trial, so that the verdict was fraudulently obtained in her favor.

There is no question about the jurisdiction of a court of equity to grant relief against a judgment at law on the ground of fraud, whether the fraud was in the transaction or the instrument on which the action arose, or in the trial and the manner of obtaining the judgment. The whole subject was carefully considered in the case of *The Ex'rs of Powers* v. *The Adm'r of Butler,* 3 Gr. Ch. 465, in which it was held that where facts existed which rendered it inequitable in the plaintiff at law to enforce his judgment, and these facts could not avail the defendant, either by reason of the rigid rules of law, or by

fraud or accident, or by reason of their being unknown to him in time for that purpose, without any fraud or negligence on his part, equity would restrain the plaintiff by perpetual injunction from proceeding upon the judgment, or would otherwise relieve against it. Such jurisdiction, with the proper limitations upon it, was never more tersely or clearly stated than by Chief Justice Marshall, in the *Marine Ins. Co.* v. *Hodgson,* 7 Cranch, 336:

"Without attempting," says the learned judge, "to draw any precise line to which courts of equity will advance and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

See, also, *Tompkins* v. *Tompkins,* 3 Stock. 512; Freeman on Judgments, § 491; *Insurance Co.* v. *Field,* 2 Story, 59.

The learned counsel for the defendant, while admitting, on the argument, the general jurisdiction, insisted that there was nothing in the structure of the bill in the present case which authorized the court to treat the suit as an application for a new trial on account of newly-discovered evidence.

The specific prayer undoubtedly is that the judgment be set aside on the ground that it was obtained by fraud. But there is also a prayer for an injunction and for general relief, and under these it has been the practice in equity, unless the case disclosed some defence peculiar to courts of equity and which would be unavailable at law, to decline to go further than to set aside the judgment and leave the parties to a new trial in the original forum. This is especially so when the prayer of the bill is for an injunction; bills of which sort, says Judge Story, are usually called bills for a new trial. Story, Eq. Jur. § 887.

Regarding the case as in effect an application for a new trial, do the allegations of the bill authorize the court to interfere with the judgment?

As the alleged newly-discovered evidence is a legal and not an equitable defence, the only questions are whether it is sufficient, if true, to prove fraud and injustice in the judgment, and whether the complainant has shown due diligence in the effort to procure the testimony for the trial?

1. The complainant states in the bill of complaint that more than two years after the judgment, to-wit, in the spring of 1880, it ascer-

tained, on what is believed to be abundant proof, that the assured, Trefz, for a long time prior to 1873, when he obtained the new policies of insurance, had been a confirmed and habitual drunkard, and had greatly impaired his health by gross habits of intoxication, which rendered him liable to the sun-stroke, the concealment of which was the ground of defence urged on the trial; that the defendant, Christina Trefz, when the policies were renewed in her favor, well knew the physical situation and habits of her husband, and that the renewal was obtained by the fraudulent concealment thereof from the complainant; that the said habits of intoxication continued and increased constantly after the policies were issued, and caused the death of the insured during the year 1876; that he was in the constant habit of being drunk day by day, and became subject to *delirium tremens,* which rendered him very violent in his family, rapidly undermined his health, and speedily caused his death; that the defendant was perfectly aware of his condition, but expecting to obtain the amount of the policies upon his anticipated death she took pains to conceal his condition from the public, and especially from the agents of the complainants, who, as she knew, were making strenuous efforts to obtain proof of the facts, which were suspected but not actually known, in order that they might be proved upon the trial; that the physicians who had attended him, and who were well aware of his condition and habits, had died shortly before the trial, and she, knowing that the facts could not be reached through them, concealed as far as possible his true condition from the physicians who attended him towards the close of his life; that as soon as these facts were discovered the complainant obtained the several affidavits of Christina Sitzman, Catharine Engle, and Frank Ehehalt, tending to establish the foregoing material allegations of fraud, which were first used in the court on an application for a new trial, and are now annexed to the bill of complaint and form a part thereof. Whilst the demurrer of the defendant does not admit the truth of the mere *pro forma* charge of fraud in obtaining the judgment at law made in the complainant's bill, it does admit the truth of every fact stated which goes to establish the fraud; and if the foregoing statements must be accepted as true, they are quite sufficient to justify the court in enjoining all further proceedings upon the judgment until at least some further investigation into their truth can take place.

2. There is more difficulty about the question of the use of due diligence. I wish that the bill had been more specific in this regard. It iterates and re-iterates its use, but I should have been better satis-

fied if it had told us more definitely what was done and in what particular directions this large activity expanded itself.

However, as most of the important facts are alleged to be within the personal knowledge of the defendant, and the charge is that she has carefully concealed them from the complainant, I think the latter is entitled to a discovery. The demurrer is therefore overruled, and the defendant is allowed 40 days in which to put in her answer.